Filed 6/14/16  Davis v. Superior Court CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| SABIAN MARCEL DAVIS,<br><br>          Petitioner,<br><br>     v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>          Respondent;<br><br>THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>          Real Party in Interest. | No. B264734<br><br>(Los Angeles County<br>Super. Ct. No. GA095546) |

ORIGINAL PROCEEDINGS in mandate.  Teri Schwartz, Judge.  Petition denied.

Ronald L. Brown, Public Defender, Albert J. Menaster, Stacey Donoso and Dylan Ford, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Jackie Lacey, District Attorney, Phyllis C. Asayama and John Harlan II, Deputy District Attorneys, for Real Party in Interest.

* * * * * *

Petitioner Sabian Marcel Davis seeks a writ of mandate directing respondent Los Angeles Superior Court to grant his motion to designate his charged felony under Penal Code section 484e, subdivision (d) (section 484e(d)),[1] grand theft of access card information, as a misdemeanor petty theft under section 490.2, a provision added by Proposition 47, the Safe Neighborhoods and Schools Act (as approved by voters, Gen. Elec. (Nov. 4, 2014)). (Proposition 47.) We deny the petition.

**BACKGROUND**

Petitioner was arrested on January 19, 2015. A search yielded a Citibank debit card in the name of Audrey Huggins. Detectives determined the card had been reported stolen, and there had been several minor transactions involving the card after the date of its theft. They were able to contact Huggins, who informed them she had lost the card, she did not know petitioner, and she had not given him permission to use the card.

An information filed on February 17, 2015, charged petitioner with one felony count of violating section 484e(d), which states, "Every person who acquires or retains possession of access card account information with respect to an access card validly issued to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently, is guilty of grand theft." It also alleged petitioner had sustained three prior serious or violent felony convictions.

On March 23, 2015, petitioner filed a motion asking respondent court to redesignate this felony charge as a misdemeanor pursuant to Proposition 47, arguing his violation of section 484e(d) was a misdemeanor pursuant to section 490.2, subdivision (a) (section 490.2(a)), added by Proposition 47. That section provides: "Notwithstanding Section 487 [(defining grand theft)] or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor," unless the defendant has certain disqualifying prior convictions. (§ 490.2(a).) Petitioner supplied documentation the

---

[1]     Undesignated statutory citations are to the Penal Code unless otherwise noted.

actual loss from the use of the stolen debit card was $272.63. In opposition, real party in interest argued section 484e(d) required no measurement of loss. Real party in interest also noted possible ways to value the property involved, such as valuing the card itself, which would be less than $950, or valuing the amount of money in the attached account, which in most cases would involve more than $950. In a supplemental opposition, real party in interest further argued the Legislature deemed the value of access card information as over $950 by designating a violation of section 484e(d) as grand theft.

Respondent court held an initial hearing on the motion. The parties attempted to stipulate to two facts, although it is not clear what exactly those facts were. There is no question the parties agreed petitioner had no disqualifying prior convictions that would render him ineligible for relief under Proposition 47. Defense counsel indicated the parties also stipulated "that any amount that could be proven in this case would be under $950." The prosecutor responded, "[I]t's our position, as the court knows from our moving papers, that the loss is not an element in this—or is not a factor for consideration. [¶] The fraudulent loss we're aware of at this time—I'm not sure as far as who even committed the fraudulent loss. He's not being charged with, you know, actually committing the fraudulent loss. But it would be under $950 what somebody has used fraudulently on the card." The court asked if the prosecutor would "stipulate to those facts," and the prosecutor responded affirmatively.

Respondent court viewed the issue as whether section 484e(d) defined a theft offense. It also raised the issue of how to assess the value involved, and specifically mentioned assessing the credit limit on the card. The prosecutor said he did not have evidence of the credit limit at that time. Respondent court denied the motion without prejudice, giving real party in interest the opportunity to present evidence of the credit limit on the card.

Respondent court held another hearing, during which the parties expressly stipulated the cash available via the debit card on the day of petitioner's arrest was $1,016.40, and with overdraft protection, was $1,866.40. Respondent court again denied the motion without prejudice to petitioner raising the issue again at sentencing.

Petitioner initially filed this writ petition on June 11, 2015, and we summarily denied it on July 29, 2015. Our Supreme Court granted review and transferred the matter to us with directions to vacate our order and issue an order directing respondent court to show cause why the relief sought in the petition should not be granted. We did, and real party in interest filed a return, and petitioner filed a reply.[2]

## DISCUSSION

We conclude section 490.2(a), as enacted by Proposition 47, applies to section 484e(d).[3] In brief, section 490.2(a) redefines theft offenses as misdemeanors if they involve property valued at less than $950, "[n]otwithstanding . . . *any other provision of law defining grand theft*." (Italics added.) Because section 484e(d) defines the acquisition or retention of access card account information as grand theft, it is subject to the value requirement enacted in section 490.2(a). This is consistent with voter intent that Proposition 47 "shall be broadly construed to accomplish its purposes" of requiring "misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft." (Ballot Pamp., Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 15, p. 74, § 3, p. 70.) We reject real party in interest's contrary arguments.

This conclusion means that, for defendants who violate section 484e(d) *after* Proposition 47's enactment, like petitioner here, the prosecution must prove the value of the access card account information exceeded $950 in order to obtain a felony conviction. (Cf. *People v. Sherow* (2015) 239 Cal.App.4th 875, 879 [noting under Prop. 47

---

[2] In the return, real party "admit[ted] that Petitioner's case does not involve the theft of any tangible property valued in excess of $950, and that Petitioner's criminal history would not disqualify him from the benefit of section 490.2 if section 490.2 applied to grant theft as defined in section 484e(d)." At oral argument, real party clarified it conceded the amount *taken* from the account was $272.63, but did not concede the value of the property involved was less than $950. In light of this, we ordered the parties to file supplemental briefs on the proper method of valuing access card information in section 484e(d), which they did. We address the valuation issue *post*.

[3] This issue is currently pending before our Supreme Court. (*People v. Romanowski* (2015) 242 Cal.App.4th 151, review granted Jan. 20, 2016, S231405; *People v. Cuen* (2015) 241 Cal.App.4th 1227, review granted Jan. 20, 2016, S231107.)

4

"shoplifting" in § 459.5 "is now a misdemeanor unless the prosecution proves the value of the items stolen exceeds $950"].)  This is not one of the many cases in which the defendant has *already* been convicted and sentenced to a felony prior to Proposition 47 and is now seeking recall and resentencing under the petitioning procedure created by Proposition 47 and codified in section 1170.18.  In those cases, the petitioner bears the burden to prove he or she is eligible for relief, which includes showing the value of the property involved in the offense was less than $950.  (See *People v. Rivas-Colon* (2015) 241 Cal.App.4th 444, 449; *Sherow, supra*, at p. 880.)

The parties disagree on the method of valuing the access card account information under section 484e(d).  Real party in interest argues the value should be based on the funds accessible via the access card account information—here, $1,866.40 ($1,016.40 plus overdraft protection).  Petitioner argues the value should be based on the amounts *actually* taken from the accounts linked to the access card information—here, $272.63— or alternatively based on a nominal valuation of the information itself.  We agree with real party in interest.[4]

While section 490.2(a) does not specify how the $950 threshold is determined, "[t]he means of valuing stolen property is settled under the theft statutes. . . .  [¶]  Penal Code section 484 defines theft.  In doing so, it states:  'In determining the value of the property obtained, for the purposes of this section, the reasonable and fair market value shall be the test, . . .'"  (*People v. Swanson* (1983) 142 Cal.App.3d 104, 107.)  The "property obtained" under section 484e(d) is "access card account information."  "Access card" is defined as "any card, plate, code, account number, or other means of account access that can be used, alone or in conjunction with another access card, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a

---

[4]     Our decision does not foreclose other methods of valuation.  We simply conclude the access card account information in this case is properly valued at the amounts accessible in the linked accounts.

5

transfer of funds, other than a transfer originated solely by a paper instrument." (§ 484d, subd. (2).)

Under these provisions, the "fair market value" of the access card account information here is most logically $1,866.40, the amount that *could have been obtained* from the accounts linked to that information. The "fair market value" means the highest price obtainable in the marketplace rather than the lowest price or the average price. (*People v. Pena* (1977) 68 Cal.App.3d 100, 104; see *People v. Tijerina* (1969) 1 Cal.3d 41, 45 ["In the absence of proof . . . that the price charged by a retail store from which merchandise is stolen does not accurately reflect the value of the merchandise in the retail market, that price is sufficient to establish the value of the merchandise . . . ."]; *People v. Cook* (1965) 233 Cal.App.2d 435, 437-438 [suits stolen from a department store are to be valued by their fair market value not their special value to any particular individual]; *People v. Williams* (1959) 169 Cal.App.2d 400, 403 [value of men's suits stolen from store was the fair market value, as testified by sales clerk of store]; *People v. Lizarraga* (1954) 122 Cal.App.2d 436, 438 ["'The value to be placed upon stolen articles for the purpose of establishing a felony charge is the fair market value of the property and not the value of the property to any particular individual.'"].) Valuing the access card account information here at the $272.63 actually taken would *undervalue* that information because petitioner still had access to over $1,500 in additional funds.

Setting the value of the access card account information at the amount taken from the accounts also does not fit the facts here. Appellant was not charged with *using* the access card account information to obtain the $272.63, which violates section 484g, nor was there evidence to show he was the person who actually took the funds out of the account. Instead, he was charged with "acquir[ing] or retain[ing]" access card account information in violation of section 484e(d), so valuing the account information based on the amounts *actually* taken would not accurately reflect the record here.

Petitioner argues valuing the account information under section 484e(d) at the amount in the linked account would lead to an "absurd result." He explains: an individual who uses the account information to obtain money or goods worth less than

$950 would be guilty of a misdemeanor under section 484g, but the same individual who acquires and retains the account information linked to an account containing more than $950 but does not take any money could be charged with a felony under section 484e(d). There is nothing absurd about this scenario. The Legislature could have viewed possession of the means to access all of the money in an account (which could be considerable) as more dangerous than actually using that information to obtain only a small amount of money. By valuing the access card account information under section 484e(d) at the amount available in the linked account, we reinforce the legislative scheme reflected in section 484e(d) and section 484g, while also upholding the voters' purpose in Proposition 47 to treat theft offenses involving less than $950 as misdemeanors.

We also reject petitioner's suggestion of assigning the account information a nominal value. Doing so would not place the highest value on the stolen account information, which in this case was upwards of $1,800 had petitioner used the information. Doing so would also divorce the account information from the accounts to which it is linked and from the purpose of all such account information—to obtain cash or purchase goods or services.

Thus, we believe the value of the stolen account information can realistically be determined by reference to the amounts in the accounts that the information is designed to access and that are available for withdrawal. Because the parties stipulated the amount in the account linked to the debit card found on petitioner in this case exceeded $950, appellant was properly charged with a felony violation of section 484e(d).

## DISPOSITION

The petition for a writ of mandate is denied.


FLIER, J.

I CONCUR:


GRIMES, J.

7

**Bigelow, P.J., Concurring:**

I concur in the result, but disagree with the majority's reasoning.

The Courts of Appeal are divided on whether Proposition 47 (Prop 47) applies to section 484e, subdivision (d)[1] (484e(d)), prohibiting the possession of an access card or account information. I agree with those cases which find that section 484e(d) is not within the ambit of Prop 47.

Prop 47, "The Safe Neighborhoods and Schools Act," (the Act) reduces the punishment for a number of theft and drug related offenses. It went into effect the day after the voters approved it in the general election on November 4, 2014. (Cal. Const., art. II, § 10, subd. (a).) As relevant here, the Act added section 1170.18, subdivision (a), which allows petitioners to request resentencing of specified felony drug and theft offenses to misdemeanors, unless the defendant is ineligible. The statute provides that a defendant may "request resentencing in accordance with Sections 11350, 11357, or 11377 of the Health and Safety Code, or Section 459.5 473, 476a, 490.2, 496, or 666 of the Penal Code . . . ." (§ 1170.18, subd. (a.).) Section 484e(d) is not among the enumerated crimes to which the Act applies.

Given that his crime is not specifically listed as one subject to resentencing, petitioner contends his offense is reducible based on another new statute brought about by Prop 47, section 490.2. It states: "Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft *where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950)* shall be considered petty theft and shall be punished as a misdemeanor . . . ." (§ 490.2, subd. (a), italics added.) Petitioner claims that because the value of the access card account information he *possessed* was less than $950, his crime should be reclassified as

---

[1]     All further section references are to the Penal Code.

a misdemeanor based on section 490.2. I agree with the People that the unlawful acquisition or possession of access card account information under section 484e(d) does not fall within the ambit of section 490.2.

Section 484e(d) provides that "[e]very person who acquires or retains possession of access card account information with respect to an access card validly issue to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently, is guilty of grand theft." Section 484e(d) thus defines a possession-based crime, not a theft-based crime contingent on the value of the money or property taken. (*People v. Molina* (2004) 120 Cal.App.4th 507, 512 (*Molina*).) The value of the access card account information is not an element of the crime defined by section 484e(d). To prove a violation of section 484e(d), *there need not be any "financial, legal or property loss . . . ."* (CALCRIM No. 1952, italics added.) Section 484e(d) criminalizes the possession of access card account information with the intent to use it fraudulently; it does not criminalize the use of access card account information to acquire something of value. Indeed, to violate the statute, the access card to which the account information relates need not be currently valid. (*Molina, supra,* at p. 514.) This is in contrast to section 484g, which renders it grand theft for a defendant to use an unlawfully procured access card or access card account information to obtain money, goods, services, or anything else of value, if the value of such money, goods, services, or anything else of value exceeds $950 in any six-month period.

I acknowledge that section 490.2 expressly applies to all crimes "defining grand theft." But its reference to section 487 and "any other provision of law defining grand theft" is expressly made in conjunction with language referring to crimes where a person obtains property that has a readily quantifiable value, i.e., "money, labor, or real or personal property." As I have pointed out, the crime of possessing access card account information has never required proof of loss. This is because the Legislature was not seeking to protect consumers from the theft of property valued by reference to "money, labor, real or personal property" when it enacted section 484e(d). Instead,

2

"[t]he Legislature intended to criminalize all fraudulent account access by means currently available or that might become technologically available in the future. [Citation.] . . . [T]he Legislature intended to criminalize any means to fraudulently access an account either alone or in conjunction with other access devices. [Citation.]" (*Molina, supra*, at p. 514.) In other words, the Legislature meant to criminalize the mere acquisition or possession of access card account information with fraudulent intent "to provide broad protection to innocent consumers[,]" (*id.* at p. 519), irrespective of the potential or actual monetary loss to the victim. As a result, the *value* of a defendant's acquisition or possession of access card account information is simply not an element of the crime. To attempt to put this crime in the category of those reducible by Prop 47 is like trying to put a proverbial square peg in a round hole.

Including violations of section 484e(d) under the rubric of Prop 47 adds an entirely new element to the crime – that of somehow assigning a value to the access card account information taken or possessed. There is no language in sections 490.2 or 1170.18 that indicates a legislative intent to punish violations of section 484e(d) according to some valuation and there is no language directing how to make such valuation.

Based on the plain language of section 484e(d), I would conclude the possession of access card account information—which is not the theft of property that can be valued by reference to money, labor, or real or personal property—does not qualify as a crime that may be reduced to a misdemeanor under Prop 47.


BIGELOW, P. J.


3